UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KALLI JENKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT**

COMES NOW Plaintiff, Kalli Jenkins, and for her claims and causes of action against Defendant, The Lincoln National Life Insurance Company, states as follows:

PARTIES

1. Kalli Jenkins ("Jenkins") is a resident and citizen of the State of Missouri.
2. The Lincoln Insurance Company of America ("Lincoln") is an out of state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln in this action.

JURISDICTION AND VENUE

3. Jenkins brings her claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.
4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).
5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in this district under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.
7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Since July 1, 2013, Jenkins worked as a Food Service Worker for Saint Luke's Health System ("St. Luke's").
10. During her employment, Jenkins suffered from chronic and progressive conditions including Wernicke-Korsakoff syndrome, cognitive dysfunction, loss of short-term memory, disorientation, headaches, and malaise.
11. Jenkins's chronic conditions impaired her ability to perform her own occupation resulting in her eventual leave from work on September 7, 2021.
12. St. Luke's sponsored a group long-term disability ("LTD") benefits plan ("Plan") for its participating employees.
13. The Plan is an employee welfare benefits plan as defined by 29 U.S.C. § 1002(1).
14. The Plan offered disability benefits to qualifying St. Luke's employees, including Jenkins.
15. At all relevant times, Jenkins has been a participant and a covered person under the terms of the Plan.
16. St. Luke's is the administrator of the Plan.
17. St. Luke's delegated or attempted to delegate the function of issuing the LTD claim determinations to Lincoln.

18. St. Luke's and Lincoln entered into an administrative services contract through which St. Luke's paid Lincoln for acting as claim administrator.

19. Jenkins enrolled in the Plan and was eligible for benefits.

20. The Plan provided that employees would be entitled to receive LTD benefits for 24 months if they became "Disabled" from their "Own Occupation" which The Plan defines as follows:

> ***Disability*** *" or "* ***Disabled*** *", with respect to Long Term Disability, means:*
> *Applicable to Class 1, 4:*
> *b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "* ***Disability*** *" or "* ***Disabled*** *" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

21. Lincoln defines "material and substantial duties" as:

> *"* ***Material and Substantial Duties*** *", with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

22. After 24 months, Lincoln will continue to pay LTD benefits if a claimant is found "Disabled" from "Any Occupation" which Lincoln defines as:

> **"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

23. Upon her leave from work, Jenkins initiated an LTD claim with Lincoln.

24. Lincoln determined that it needed more information and completed an internal review of the medical supplied to Lincoln.

25. On August 31, 2022, Lincoln denied Jenkins's LTD claim.

26. On November 17, 2023, Jenkins appealed Lincoln's denial and provided her medical records, her Social Security claim file, and her Assisted Living Resident file demonstrating that Jenkins cannot perform her occupation on a full-time basis.

27. On August 6, 2021, Jenkins was seen by Payton Frossard, RN, at St. Luke's Hospital for

complaints of nausea, vomiting, and diarrhea for the last 3 weeks. She was put out on FMLA.

28. On September 7, 2021, Jenkins was found at her home non-responsive, and taken to Truman Medical Center's Emergency Department. Jenkins was hospitalized, testing was performed, and Jenkins was diagnosed with Wernicke-Korsakoff syndrome and found incapable of caring for herself.
29. From 11/13/2021 to 1/21/2022 Jenkins was hospitalized at Truman Medical Center.
30. On November 17, 2021, Dr. Binod Wagel reviewed an EEG study and interpreted it as abnormal and consistent with mild encephalopathy, global in nature.
31. On January 19, 2022, Dr. Brice Dean noted a diagnosis of dementia, and that significant wandering and paranoia/suspiciousness were present.
32. On January 21, 2022, Jenkins was admitted to The Groves/Rosewood Rehab and Healthcare Center ("Rosewood"), a skilled nursing and residential facility where she remains currently and receives 24-hour care. On admission her diagnoses included cognitive defects and Wernicke's encephalopathy. Impaired memory was also noted.
33. Jenkins has continued to receive treatment at Rosewood until present.
34. On January 25, 2022, Jenkins was seen at Rosewood for a consultation, and it was noted that she was placed in the Alzheimer's unit. The note includes that her review of systems was mostly unobtainable.
35. On February 15, 2022, Dr. Johana Mejias-Beck noted that Jenkins' brain imaging showed small vessel disease and diffuse atrophy. She also noted impaired memory, confusion and disorientation.
36. On February 24, 2022, Jenkins was seen at Rosewood, and tested for Covid, which was

negative. On review of her systems, cognitive impairment and forgetfulness, hypersomnia, and social isolation were noted.

37. On March 11, 14, 16, 25 and 29, 2022, Jenkins was again seen at Rosewood for a follow up and evaluation. Jenkins was noted to be ill-appearing, and reported stomach upset, throwing up, dizziness, and diarrhea. She was oriented only to person and place.

38. On April 7, 2022, Jenkins was seen at Rosewood for follow up and medication reduction, again she was oriented only to person and place, and her mood was noted to be dysphoric. Jenkins' diagnoses included dementia.

39. On May 1, 2022, Jenkins' application for Social Security Disability Insurance was approved.

40. On August 12, 2022, Jenkins was again seen at Rosewood for a follow up on her cognitive state.

41. On September 13, 2022, Lesa Droz, LPN, again noted diagnoses of dementia.

42. On November 4, 2022, Jenkins was described by a social worker during a service assessment in the nursing home as having memory impairment, variable mental functioning through the day, and impaired judgment.

43. On January 4, 2023, Jenkins was again treated at Rosewood for active diagnoses of Non-Alzheimer's disease, seizure disorder, and bipolar disorder.

44. On February 10, 2023, Tina Ross, FNP-C saw Jenkins for continued treatment.

45. On March 23, 2023, Lincoln purchased a medical review from Network Medical Review Co, Ltd. employees Dr. Clayton Cowl and Dr. Rujvi Kamat. Both Dr's. Cowl and Kamat limited Jenkins only for the period of hospitalization, November 2022 to January 2023. In the absence of a neuropsychological examination, Dr. Kamat found Jenkins capable of working full time without restriction beginning September 8, 2021, to the present.

46. On December 14, 2023, Lincoln referred Jenkins' claim to June Restrepo, PhD, an employee of Reliable Review Services for review of her medical records. Dr. Restrepo found that Jenkins was limited only during her hospitalization in November 2021, thereafter, finding her unrestricted.

47. On January 9, 2024, Lincoln again denied Jenkins's LTD claim.

48. At all relevant times, Jenkins was and remains "Totally Disabled" under the Plan.

49. Jenkins has exhausted all administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

50. Jenkins realleges the preceding paragraphs as if fully set forth herein.

51. Jenkins is entitled to all unpaid and accrued LTD benefits, as Lincoln;

    a. Made an unfavorable decision without substantial evidence;
    b. Failed to properly consider Jenkins's medical impairments and resulting limitations;
    c. Ignored evidence that Jenkins's conditions have not improved to the present; and
    d. Issued an unfavorable decision that was arbitrary and capricious.

52. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Jenkins is entitled to an award of actual damages for losses suffered.

53. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

54. Lincoln has not satisfied its obligation to pay Jenkins's LTD benefits.

55. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Jenkins prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and

prejudgment interest.

COUNT II
29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

56. Jenkins realleges the preceding paragraphs as if fully set forth herein.

57. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

58. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary Lincoln of care:

> "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

59. As the Plan's designated claims administrator and entity exercising discretion in claims administration, Lincoln is a fiduciary.

60. Jenkins participated in Lincoln's LTD benefits plans as previously indicated.

61. As the payor of benefits and the entity responsible for benefits determinations, Lincoln operates under an inherent structural conflict of interest.

62. A higher than marketplace quality Lincoln, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs Lincoln's actions as a fiduciary.

63. Lincoln breached its fiduciary duty in:

64. Referring Jenkins's claim for medical review to persons who were not able to exercise independent thought or judgment, or deviate from Lincoln's previously expressed position;

a. Referring Jenkins's claim for medical review to a person who was not qualified to render any medical judgments or opinions;

b. Engaging in a direct structural conflict of interest by assuming the role of both claim administrator and potential payor of benefits;

65. Engaging in a direct structural conflict of interest by referring Jenkins claim to a person who is directly answerable to Lincoln and whose employment and compensation is determined by Lincoln; and

a. Failing to comply with its internal guidelines and claims processing procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations.

66. Failing to provide all documents relevant to Lincoln's unfavorable decision.

67. Lincoln denied Jenkins's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

68. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with a conflict of interest and breached its fiduciary duty to both Jenkins and the Plan's participants and beneficiaries generally.

69. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

70. Lincoln's violations of regulations alone allow Jenkins the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

71. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

72. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Jenkins prays

for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. # 42793
Kyle H. Sciolaro, Mo. # 64568
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF